In re MAILERS UNLIMITED, INC., Debtor,

John J. Valerio, Debtor,

Jointly Administered as Mailers Unlimited, Inc., Debtor.

MAILERS UNLIMITED, INC., Plaintiff,

v.

WORLDWIDE DIRECT MARKETING, Defendant.

Bankruptcy No. 79–02125G.
Adv. No. 80–0201G.

United States Bankruptcy Court, E. D. Pennsylvania.

Sept. 25, 1980.

James A. Hartz, Fellheimer, Krakower & Eichen, Philadelphia, Pa., for the debtor/plaintiff Mailers Unlimited, Inc.

Stanley M. Poplow, Philadelphia, Pa., for the defendant Worldwide Direct Marketing.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

In this case we must decide whether the defendant entered into a contract with the debtor whereby the defendant agreed to pay $400 per month for the use of a piece of equipment it borrowed from the debtor. We conclude that a contract can be inferred from the conduct of the parties herein and that, consequently, the defendant is liable to the debtor for five months' rent (or $2,000) with interest.

The facts of the instant case are as follows:[1] Mailers Unlimited, Inc. ("the debtor") was engaged in the business of providing commercial mailing services. To complete certain jobs it was sometimes necessary for the debtor to borrow equipment from other companies in the business, including Worldwide Direct Marketing ("Worldwide"). A trade practice of this type of business was to borrow and lend equipment from competitors without charge, and in the past the debtor and Worldwide had always lent each other various types of equipment without charge.

However, in 1979, the debtor had lent Worldwide a machine called a burster which was returned damaged to the debtor by Worldwide. Consequently, the debtor had had to purchase a new burster. Subsequently, when Worldwide's plant manager asked to borrow the new burster, he was told by the debtor's president that he would have to pay a rental for it of $400 per month (the amount that the debtor was paying for the burster under a lease–purchase agreement. Worldwide's plant manager said that it needed the machine but that the debtor would have to make arrangements with Worldwide's president about the rental payments. Although no such arrangements were made, Worldwide's plant manager thereafter picked up the burster from the debtor and used it for five months. While Worldwide received monthly bills from the debtor for the rental of the burster, Worldwide never paid those bills nor did it inform the debtor that it would not pay those bills.

On November 15, 1979, the debtor filed a petition for an arrangement under Chapter 11 of the Bankruptcy Code ("the Code").[2] On April 29, 1980, the debtor filed a com-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The Bankruptcy Code became effective October 1, 1979. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2682 (1978).

plaint against Worldwide seeking $2,000 as five months rent for the burster.[3]

■ The issue presented is whether there was ever a contract between the debtor and Worldwide for the rental of the burster. Generally, a contract consists of an offer and an acceptance and the acceptance must comply with the terms of the offer or no contract is created. Restatement of Contracts, § 59 (1932). It appears that, in the case before us, there was no express acceptance by Worldwide of the rental terms offered by the debtor since Worldwide's plant manager told the debtor that Worldwide's president would have to accept the terms and it does not appear that the debtor ever contacted the president of Worldwide about those terms.

■ However, even where no express contract exists, a contract may be inferred from the conduct of the parties. "If the parties have used such indefinite language as to leave it uncertain whether or not they intend to close the deal and make a contract, subsequently proceeding with or accepting performance under it may remove the uncertainty." Corbin on Contracts, § 101 (1950). In *Bloomgarden v. Coyer*, 479 F.2d 201 (D.C.Cir.1973), the United States Court of Appeals for the District of Columbia Circuit held that an implied–in–fact contract contains all the elements of a binding agreement but differs from an express contract in that it is not written but is instead inferred from the conduct of the parties. *Id.* at 208. To establish an implied–in–fact contract, the court stated that the following elements must be shown:

(1) that services were performed under such circumstances as to give the recipient reason to understand

(a) that the services were performed for him and not for someone else, and

(b) that the services were not rendered gratuitously, but with the expectation of compensation; and

(2) that the services were beneficial to the recipient.[4]

■ Applying these principles to the facts of this case, we conclude that the existence of a contract may be implied from the conduct of the parties. The evidence clearly shows that Worldwide received services from the debtor, namely, the use of the burster. Further, Worldwide knew that the burster was not loaned gratuitously but that the debtor expected to be paid, because the debtor's president so informed Worldwide prior to giving it the burster and because the debtor periodically sent bills for rent to Worldwide. Finally, the use of the burster was certainly beneficial to Worldwide since it enabled it to complete a job.

Therefore, we conclude that there was an implied–in–fact contract for the rental of the burster from the debtor to Worldwide and, consequently, Worldwide is liable to the debtor for $2,000 representing five months' rental of the burster.

■ There is also before us the request of the debtor for attorney's fees. However, since the "American Rule" precludes the award of attorney's fees except on a showing of bad faith or on specific statutory authorization, and we finding neither in the case at bench, we will deny that request. *See In re Ratmansky*, 2 B.R. 527 (E.D.Pa. 1980), *citing Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

---

**3.** The debtor also sought $141.38 for mailing services which Worldwide apparently does not contest.

**4.** 479 F.2d at 208. *See also, United States v. Consolidated Edison Co.*, 452 F.Supp. 638, 654 (S.D.N.Y.1977).